## PITTSBURGH RYS. CO. v. GIVENS.

(Circuit Court of Appeals, Third Circuit. March 30, 1914.)

### No. 1809.

1. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

A reviewing court must consider objections to specific parts of the charge in the light of the whole charge, in order to determine whether harmful error to the prejudice of plaintiff in error has been committed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CARRIERS (§ 280\*)—INJURY TO PASSENGERS—CARE REQUIRED.**

Under the rule that a common carrier is responsible for the safety of a passenger, so far as the exercise of human prudence, caution, and foresight can secure it, an instruction that a street car company in carrying a passenger owes to her the highest degree of care, that the contract is for safe carriage, and therefore the company undertaking to carry must exercise a high degree of care in the operation of the car carrying the passenger, was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103; 1105, 1106, 1109, 1117; Dec. Dig. § 280.\*]

**3. CARRIERS (§ 321\*)—INJURIES TO PASSENGERS—INSTRUCTIONS.**

In an action for injuries to a street car passenger in a collision between the car and an automobile, an instruction that any rivalry between the motorman and the driver of the automobile, each expecting the other to get out of the way, would not excuse, but would rather aggravate, the negligence of the motorman, was not erroneous.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.\*]

**4. CARRIERS (§ 305\*)—STREET RAILROADS—INJURIES TO PASSENGERS—COLLISION WITH AUTOMOBILE—CONCURRING NEGLIGENCE—INSTRUCTIONS.**

In an action for injuries to a street car passenger in a collision between the car and an automobile, an instruction that, even though the chauffeur was negligent, if the jury found the motorman was guilty of any negligence contributing to the accident, they should find for plaintiff, was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1132, 1136–1139, 1245, 1246; Dec. Dig. § 305.\*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, District Judge.

Action by Anna Givens against the Pittsburgh Railways Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clarence Burleigh and Wm. A. Challener, both of Pittsburgh, Pa., for plaintiff in error.

Meredith R. Marshall and Rody P. Marshall, both of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. Anna Givens, the defendant in error (hereinafter called the plaintiff), brought suit in the court below against the Pittsburgh Railways Company, plaintiff in error (hereinafter called the defendant), to recover damages resulting from injuries caused by the collision of an automobile with a street car of the defendant company in which she was riding, the collision having occurred, as was alleged, by reason of the negligence of the said defendant company. From the judgment on a verdict in plaintiff's favor, the defendant has sued out this writ of error.

It appears from the record before us, that the jurisdiction of the case rested upon the diverse citizenship of the parties.

On the night of December 3, 1911, while the plaintiff was a passenger on a street car operated by the defendant, the said car collided with an automobile at the intersection of two streets, viz., Murray Ave-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nue, along which the street car was running, and Darlington Road, which crosses Murray Avenue at right angles. The automobile was being driven along Darlington Avenue, somewhat on the right side thereof, and the street car was proceeding on the inbound track nearest the approaching automobile. It appears that, when the trolley car had nearly crossed Darlington Road, the automobile had approached so closely that, as it turned sharply to the right on Murray Avenue, to avoid a head-on collision with the car, the fender of the car struck the left front wheel of the automobile and swung it around, so that the rear thereof struck the rear part of the street car, smashing in two windows and throwing the plaintiff out of her seat, thereby inflicting the injuries complained of. On the right hand side of the inbound track, facing the direction in which the trolley car was moving, and a short distance before reaching Darlington Road, there was a signal to run slowly.

There is much conflict of testimony as to the speed at which the car was running at the time it crossed Darlington Road. Witnesses for the plaintiff who were in the automobile testified that the trolley car was running from 25 to 28 miles an hour, one of the witnesses saying that he believed it was running at 40 miles an hour. The plaintiff testifies that before the car reached Darlington Road, the high speed attracted her attention and caused her to put down a book which she was reading, and that immediately afterward she felt the crash of the collision. Testimony on behalf of the defendant was that they were running much more slowly, and that the car was within control. The passengers in the automobile testified that they were looking out for the car as they approached the crossing, and had slowed down to 6 or 7 miles an hour, within 60 feet of the tracks.

In its assignments of error, the defendant makes three objections to the charge of the court below.

"First. The court erred in charging the jury as follows: 'A street car company in carrying a passenger owes to that passenger the very highest degree of care. The contract is for safe carriage, and therefore the company undertaking to carry must exercise a high degree of care in the operation of the car which is carrying the passenger.'

"Second. The court erred in charging the jury as follows: 'Of course there may be a rivalry between the motorman and the driver of the automobile, each expecting the other to get out of the way, but that does not excuse the negligence. It rather aggravates it.'

. "Third. The court erred in charging the jury as follows, in affirming plaintiff's fourth point: 'Fourth. Even though the chauffeur of this automobile was negligent, if you find that the motorman was guilty of any negligence, contributing to the collision, then your verdict should be for the plaintiff.'"

[1] Of course in this case, as in all others, the reviewing court must consider objections to specific parts of the charge of the court below, in the light of the whole charge, in order to determine whether any harmful error to the prejudice of the plaintiff in error has been committed.

[2] Thus viewing the language of that portion of the charge excerpted in the first assignment of error, we do not think the assignment can be sustained, nor do we think that, taken by itself, there was error in instructing the jury that the defendant in this case owed to

the plaintiff a duty to exercise "the highest degree of care" in performing its undertaking of safe carriage. The duty of a common carrier of passengers is described in varying language, and there is no settled formula of words that need be or could be usefully recognized by courts in describing the duty of care owing from the carrier to the passenger. The law imposes the duty, and in doing so recognizes the human factors involved. The duty of the carrier to the passenger arises, it is true, from the contract of carriage, but apart from special stipulation, that duty is implied and defined by law. It is not one of insurance as to the safety of the passenger, but a duty which requires of the carrier that degree of care, caution and foresight which a person of great prudence experienced in the business of a common carrier would exercise in order to secure the safety of the passenger. In other words, the common carrier is responsible for the safety of the passenger, so far as the exercise of human prudence, caution and foresight can secure it. This, of course, is the prudence, caution and foresight of the man of average intelligence who recognizes and appreciates the responsibility cast upon him by the nature and risks of the business.

It is, of course, obvious that the duty of the carrier may be otherwise described, and though it is somewhat vague and unsatisfactory to speak of degrees of care, it is not extravagant or unphilosophical to speak of the care which a carrier is bound to exercise for the safety of a passenger as the very highest degree of care. This phrase, of course, means a degree of care that is consistent with the performance of an operation which, at its best, is attended with hazard. But to so characterize the care required of a carrier, does not import that he is an insurer of the safety of a passenger, as a carrier of goods is an insurer of their safe carriage. In fact, the phrase imports a liability far short of insurance. Many things may happen in the course of the performance of a carriage service which, with the highest degree of care on its part, the carrier can neither foresee nor prevent.

Taking the charge as a whole, however, it is impossible to find that the case was not properly submitted to the jury by the learned judge of the court below, and we quote the context of the part of the charge excepted to, in order to support this statement:

"The burden of proving negligence of the defendant, the injuries to the plaintiff and the resulting damages, is upon the plaintiff, and this the plaintiff is bound to establish by the weight of the evidence.

"In order that you may understand this case, it is necessary to give you some rules that ought to govern you in the application of the evidence.

"Now I have said that the burden is on the plaintiff to establish by the weight of the evidence the negligence of the defendant.

"A street car company in carrying a passenger owes to that passenger the very highest degree of care. The contract is for safe carriage, and therefore the company undertaking to carry must exercise a high degree of care in the operation of the car which is carrying the passenger. It is proper for me to state to you that this is not a controversy between the Street Car Company and the owner of the automobile. The degree of care in a case of that kind would be entirely different from what it is in this case. In this case the company owes a high degree of care; and that is, that in approaching a cross street, the car must be coming in a way that it is under control so that it may be stopped—a lookout must be kept for vehicles or persons coming across—not only for the protection of the vehicle or the person, but in order

that no accident may happen to the car in which the passenger is riding. The lookout must be kept by the motorman in order that the passenger may be safely carried. He must be on the alert. It is right to presume that vehicles, automobiles, etc., will cross, and therefore in approaching a crossing it is the duty of the motorman to keep a lookout—a careful lookout, to see if anything is coming. It is his duty to ring the gong; it is his duty to have his car so under control that he may stop it and avoid a collision. Now that is the measure of duty which the company owes to its passengers. And you must consider the evidence in the light of that rule."

[3] The rule laid down by the learned judge of the court below, to be observed by trolley cars running under the circumstances attending the running of the car in question, was severe, but not more severe than the law justifies and public policy demands for the protection, both of the passengers on the car and of those who are lawfully traversing the public highways. We see no error—certainly no prejudicial error—in the part of the charge excepted to by the second assignment.

[4] In regard to the third assignment, we have only to say that the learned judge of the court below made no mistake in instructing the jury to the effect that if they found negligence on the part of the defendant, and that it was the proximate cause of the accident—but for which the accident could not have occurred—then no negligence on the part of the driver of the automobile contributing to such accident could relieve the defendant.

The judgment of the court below is therefore affirmed.